## No. 3957

### Second Circuit

---

## MARTIN v. GAMBURG

---

· (January 27, 1931.  Opinion and Decree.)

---

Isaac Wahlder, of Alexandria, attorney for plaintiff, appellant.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellee.

McGREGOR, J.  This case presents solely an issue of facts.  The plaintiff, Thomas Martin, delivered to the defendant, Nathan Gamburg, one J. B. Sedberry feed mill, No. 3, during the month of May, 1929.  It is admitted that this was not a sale.  The plaintiff contends that the mill was left with the defendant for the purpose of letting him determine whether he would buy it, while the defendant claims that it was left with him to be sold by him on a commission basis of all over $200 for which it might be sold.

There is some question as to whether a hopper and some screens were delivered with the mill.  The proof on this point appears to be evenly balanced, but we think it unnecessary to determine this question, as it is evident that it was not the absence of these parts that caused the sale of the mill by the defendant to fail.  He claims that he would have sold the mill to one Speilman had it not been for this defect, but the evidence does not bear him out in this defense.  Speilman used the mill several days and finally decided not to buy it, not because of the lack of parts, but because of the price being too high.

Defendant claims to have sold the mill first to one Kassed for $250, and that Kassed paid $50 down on the purchase price, which said sum he (Gamburg) passed on to the plaintiff.  Kassed did not go on with the deal and is said to have demanded and received his money back after the defendant had passed it on to the plaintiff.  It is significant at this point that there was no actual money passed between defendant and Kassed, but that it was simply a matter of adjustment of credits between them, as defendant was a junk dealer and Kassed did this kind of business with him.  It was on October 26, 1929, when defendant paid the $50 to plaintiff in the form of a check.  Plaintiff says that when that check was delivered, defendant wrote on the bottom of it that there was still due

by him the sum of $150, and that at that time it was definitely agreed that defendant had bought the mill. Defendant denies this and says that nothing was said at the time that would indicate that he, himself, was buying the mill. We think the notation was made on the check, and defendant does not deny having made it, though he says he does not remember it, but if he did make such a notation it was merely a memorandum to indicate that there was due to the plaintiff the sum of $150 more out of whatever the plaintiff might receive for the mill. Under the agreement which defendant claims was made, all money received from any sale of the mill by the defendant would be due to the plaintiff until as much as $200 had been collected and paid. So this notation within itself did not evidence a sale or corroborate the contention of the plaintiff.

Some time thereafter it appears that Kassed refused to go on with the deal for the reason that he was buying it for resale and the party to whom he thought he could sell it decided not to take it on account of the absence of a hopper and some screens. In the course of time the defendant then found Speilman as a prospective purchaser. This was about two weeks after October 26, 1929, or some time in November. The defendant proposed to rent the mill to Speilman for a period of one year or until the next fall with the option of buying it at the expiration of that time at the price of $250, and with the privilege of applying on the purchase price whatever might be paid as rent. But Speilman kept the mill only a short time and decided neither to rent it nor buy it. His reason for this was, not the lack of any parts, but the excessive price. The use of the mill by him was apparently satisfactory. While it may be true that the defendant did make a proposition to rent this mill to Speilman, it is in evidence that soon after it was delivered defendant demanded of Speilman the immediate payment of the price or the return of the mill on the ground that Martin was crowding him and that he would either have to pay him or return the mill. This would indicate that the defendant was handling the mill for the account of the plaintiff. Plaintiff brings this suit for the balance of $150 due on the mill, and defendant answers, denying that he owes that sum or any other, but, assuming the position of plaintiff in reconvention, sets up the claim that he had the mill for sale for the account of the plaintiff and demands the return of the $50, which he had paid him on October 26, 1929, and which he, himself, had been compelled to return to Kassed on account of the failure of the sale to go through because of the lack of certain parts. In addition thereto he asks judgment for $50 which he would have received as a profit if he had been successful in making the sale to Speilman, which he says was prevented by the failure of the plaintiff to furnish a hopper and certain screens.

The evidence in this case is very confusing and conflicting. It does not appear to us that the plaintiff has made out his case with any degree of certainty. The trial judge evidently found the same thing with reference to this testimony, and since he was present and heard all the parties and witnesses testify, we would not be justified in disturbing his finding. It is evident, therefore, that the plaintiff should return to defendant the $50 received from him, but under the circumstances we do not think that the plaintiff should be held for any damage on account of the failure of the defendant to sell the mill for the reasons alleged by him.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment of the lower court be affirmed, the costs in both courts to be paid by the plaintiff.